IVY T. NGO (249860)
**FRANKLIN D. AZAR & ASSOCIATES, P.C.**
14426 East Evans Avenue
Aurora, CO 80014
Telephone:     (303) 757-3300
Facsimile:     (720) 213-5131
Email:         ngoi@fdazar.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA COOPER, AN INDIVIDUAL AND NEW JERSEY RESIDENT, AND JERI CONNOR, AN INDIVIDUAL AND COLORADO RESIDENT, individually and on behalf of a class of similarly situated individuals,<br><br>          Plaintiffs,<br><br>vs.<br><br><br>QUORA, INC., a Delaware corporation,<br><br>          Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>(1) UCL – Unlawful Business Practice<br>(2) UCL– Unfair Business Practice<br>(3) UCL – Fraudulent/Deceptive Business Practice<br>(4) Negligence<br>(5) Invasion of Privacy<br>(6) Breach of Confidence<br>(7) Deceit by Concealment or Omission<br>(8) Breach of Contract<br>(9) Breach of Implied Covenant of Good Faith and Fair Dealing<br>(10) Violation of New Jersey Consumer Fraud Act<br>(11) Violation of Colorado Consumer Protection Act<br>(12) Violation of Colorado Security Breach Notification Act |

# TABLE OF CONTENTS

SUMMARY OF THE CASE .............................................................................................. 1

JURISDICTION AND VENUE ........................................................................................ 2

PARTIES .......................................................................................................................... 3

A.      Plaintiffs ............................................................................................................. 3

B.      Defendant ........................................................................................................... 3

FACTUAL BACKGROUND ........................................................................................... 3

A.      Defendant Made Specific Representations to Users Regarding Its
        Protection of Users' Personal Information ......................................................... 3

B.      Defendant's Inadequate Data Security Allowed for the Quora Data
        Breach, Exposing Sensitive Personal Information .............................................. 5

C.      Users' Personal Information is an Increasingly Valuable Commodity ............... 6

CLASS ACTION ALLEGATIONS ................................................................................. 11

CLAIMS ALLEGED ON BEHALF OF ALL CLASSES ............................................... 15

First Claim for Relief ...................................................................................................... 15

        Violation of California's Unfair Competition Law ("UCL") – Unlawful
                Business ....................................................................................... 15

        Practice (Cal. Bus. & Prof. Code § 17200, *et seq.*)...................................... 15

Second Claim for Relief .................................................................................................. 17

        Violation of California's UCL – Unfair Business Practice ............................... 17

        (Cal. Bus. & Prof. Code § 17200, *et seq.*) ...................................................... 17

Third Claim for Relief ..................................................................................................... 20

        Violation of California's UCL – Fraudulent/Deceptive Business Practice ....... 20

        (Cal. Bus. & Prof. Code § 17200, *et seq.*) ...................................................... 20

Fourth Claim for Relief ................................................................................................... 21

        Negligence ......................................................................................................... 21

Fifth Claim for Relief ...................................................................................................... 23

        Invasion of Privacy ........................................................................................... 23

Sixth Claim for Relief ..................................................................................................... 24

        Breach of Confidence ........................................................................................ 24

Seventh Claim for Relief ...................................................................................25

    Deceit by Concealment or Omission ..........................................................25

    (Cal. Civil Code §§ 1709, 1710) .................................................................25

Eighth Claim for Relief ....................................................................................26

    Breach of Contract ......................................................................................26

Ninth Claim for Relief ......................................................................................28

    Breach of Implied Covenant of Good Faith and Fair Dealing.....................28

    (In the Alternative) ......................................................................................28

ADDITIONAL CLAIMS ALLEGED ON BEHALF OF THE ...........................29

NEW JERSEY SUBCLASS ONLY ..................................................................29

Tenth Claim for Relief ......................................................................................29

    Violation of New Jersey Consumer Fraud Act ...........................................29

    (N.J. Stat. Ann. §§ 56:8-1, *et seq.*)...........................................................29

    (In the Alternative) ......................................................................................29

ADDITIONAL CLAIMS ALLEGED ON BEHALF OF THE ...........................31

COLORADO SUBCLASS ONLY .....................................................................31

Eleventh Claim for Relief .................................................................................31

    Violation of Colorado Consumer Protection Act........................................31

    (Colo. Rev. Stat 6-1-101, *et seq.*)............................................................31

    (In the Alternative) ......................................................................................31

Twelfth Claim for Relief ...................................................................................33

    Violation of Colorado Security Breach Notification Act ............................33

    (Colo. Rev. Stat 6-1-716, *et seq.*)............................................................33

PRAYER FOR RELIEF ....................................................................................34

JURY TRIAL DEMANDED ..............................................................................35

1

2        1.      For their Class Action Complaint, Plaintiffs Erica Cooper and Jeri Connor

3  ("Plaintiffs") on behalf of themselves and all others similarly situated, alleges the following

4  against Quora, Inc. ("Defendant" or "Quora, Inc."), based on personal knowledge as to

5  Plaintiffs and Plaintiffs' own acts and on information and belief as to all other matters based

6  upon, *inter alia*, the investigation conducted by and through Plaintiffs' undersigned counsel:

7                              **<u>SUMMARY OF THE CASE</u>**

8        2.      This case involves a data breach affecting up to 100 million people who have

9  used Defendant's Quora social network ("Quora"), confirmed by Defendant on December 3,

10  2018 ("Quora Data Breach"). That day, Defendant announced that a malicious third party had

11  gained unauthorized access to the personal information of up to 100 million Quora users

12  ("Quora Users" or "Users").

13        3.      Launched in June 2010, Quora is a question-and-answer social media platform,

14  where questions are asked, answered, edited, and organized by its community of Users. As of

15  September 2018, Quora had a user audience of 300 million monthly unique users, up from the

16  200 million reported in 2017.[1]

17        4.      As part of the sign-up process and as a consequence of interacting with the

18  network, Quora Users created, maintained, and updated profiles containing significant amounts

19  of personal information. As disclosed by Defendant, the Quora Data Breach allowed for the

20  unauthorized access to sensitive personal information, including, *inter alia*, Quora Users'

21  names, email addresses, IP addresses, user IDs, encrypted passwords, account settings,

22  personalization data, drafts of content, and votes, as well as data imported from other social

23  networks linked to Quora, including contacts, demographic information, interests, and access

24  tokens ("Personal Information").

25        5.      Quora, Inc. maintains a privacy policy that makes specific representations to its

26  users regarding its affirmative duty to protect users' Personal Information, specifically

27

28  _____
[1] https://marketingland.com/quora-introduces-broad-targeting-says-audience-hits-300-million-monthly-users-248261

1  providing that users are in control of who has access to their Personal Information, and that

2  Quora, Inc. has implemented safeguards to protect users' Personal Information ("Privacy

3  Policy").

4       6.      While Users' Personal Information was supposed to be protected and shared only

5  with their expressed permissions and limitations, Defendant's improper data security measures

6  allowed a malicious third party to obtain the Personal Information of up to 100 million users.

7       7.      This Consolidated Class Action Complaint is filed on behalf of all persons in the

8  United States, described more fully *infra*, whose Personal Information was compromised in the

9  Quora Data Breach.

10  **JURISDICTION AND VENUE**

11       8.      This Court has jurisdiction over this action pursuant to the Class Action Fairness

12  Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds

13  $5,000,000, exclusive of interests and costs, there are more than 100 class members, and at least

14  one class member is a citizen of a state different from Defendant. The Court also has

15  supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16       9.      Venue is proper under 28 U.S.C. § 1391(c) because Defendant is a corporation

17  that does business in and are subject to personal jurisdiction in this District. Venue is also

18  proper because a substantial part of the events or omissions giving rise to the claims in this

19  action occurred in or emanated from this District, including the decisions made by Defendant's

20  governance and management personnel that led to the Quora Data Breach.

21       10.     Further, the venue provision in Defendant's Terms of Service governing Users

22  provides an additional reason that venue is proper in this District. That provision provides for

23  venue in Santa Clara County, California, which is within the jurisdiction of this District, for all

24  claims arising out of Plaintiffs' relationship with Quora.[2]

25

26

27

28  [2] Quora, *Terms of Service* (October 23, 2018), *available at* https://www.quora.com/about/tos (last visited
December 18, 2018).

11.     The Terms of Service also provide that all claims that might arise between users and Defendant would be governed by the laws of California, without regard to conflict-of-law provisions.³ Accordingly, the choice-of-law provision establishes that California law applies to Plaintiffs' and the other Class members' claims.

**PARTIES**

**A.  Plaintiffs**

12.     Plaintiff Erica Cooper is a resident and citizen of New Jersey. Plaintiff Cooper opened a Quora account and has used it for over four years. Through the opening and use of this account, Plaintiff Cooper has entrusted Defendant with her Personal Information for all relevant time periods.

13.     Plaintiff Jeri Connor is a resident and citizen of Colorado. Plaintiff Connor opened a Quora account and has used it for over a year. Through the opening and use of this account, Plaintiff Connor has entrusted Defendant with her Personal Information for all relevant time periods.

**B.  Defendant**

14.     Defendant Quora, Inc. ("Quora, Inc."), is a Delaware corporation with its principal headquarters in Mountain View, California.

15.     At all relevant times, Defendant was and is engaged in business in Santa Clara County and throughout the United States of America.

**FACTUAL BACKGROUND**

**A.  Defendant Made Specific Representations to Users Regarding Its Protection of Users'
Personal Information**

16.     Defendant's Privacy Policy makes it clear that Defendant collects information from its users.⁴ However, at all relevant times, the Privacy Policy also made specific representations to Users regarding Defendant's protection and exposure of their personal

---

³ *Id.*
⁴ Quora, *Privacy Policy* (May 18, 2018), *available at* https://www.quora.com/about/privacy (last visited
December 18, 2018).

1  information.[5] Indeed, the first statement in the Privacy Policy provides that "Quora recognizes

2  that your privacy is very important and we take it seriously."[6]

3       17.    The Policy specifically advises Users that "[t]he security of your information is

4  important to us. ***Quora has implemented safeguards to protect the information we collect***."[7]

5       18.    Additionally, the Privacy Policy provides that Quora, Inc. will only share Users'

6  personal information in specified scenarios: 1. With Quora, Inc. service providers who use the

7  information to provide services to it; 2. With affiliates and subsidiaries of Quora, Inc.; 3.

8  Metrics and aggregated data with third party advertisers or researchers; 4. During business

9  transfers of ownership (i.e., merger, sale, etc.); 5. When Quora, Inc. is required by law to do so,

10  and 6. "***[W]here individuals have otherwise consented***."[8]

11       19.    Defendant has directly acknowledged its duty to safeguard Quora Users'

12  Personal Information. In its December 3, 2018 blog post announcing the Quora Data Breach,

13  Quora CEO Adam D'Angelo declared that "***[i]t is our responsibility to make sure things like***

14  ***this don't happen, and we failed to meet that responsibility***. We recognize that in order to

15  maintain user trust, we need to work very hard to make sure this does not happen again. There's

16  little hope of sharing and growing the world's knowledge if those doing so cannot feel safe and

17  secure, and cannot trust that their information will remain private."[9]

18       20.    Despite these representations, and Defendant's admitted obligation to protect

19  Users' Personal Information, Defendant's lax approach to data security resulted in the Quora

20  Data Breach, affecting up to 100 million Quora Users.

21

22

23

24

---

25  [5] *See id.*

26  [6] *Id.*

27  [7] *Id* (emphasis added).

   [8] *Id* (emphasis added).

28  [9] Adam D'Angelo, *Quora Security Update* (December 3, 2018), *available at* https://blog.quora.com/Quora-Security-Update (last visited December 18, 2018) (emphasis added).

**B. Defendant's Inadequate Data Security Allowed for the Quora Data Breach, Exposing Sensitive Personal Information**

21.     On December 3, 2018, Defendant announced that a malicious third party had gained unauthorized access to the personal information of up to ***100 million*** Quora Users.[10]

22.     As disclosed by Defendant, the Quora Data Breach allowed for an unauthorized, malicious third party to access sensitive personal information, including, *inter alia*, Quora Users' names, email addresses, IP addresses, user IDs, encrypted passwords, account settings, personalization data, drafts of content, and votes, as well as data imported from other social networks linked to Quora, including contacts, demographic information, interests, and access tokens.[11]

23.     The Quora Data Breach's exposure of access tokens is especially troubling for those Users' who have linked their other social media networks to Quora. Access tokens contain the security credentials for a login session and identifies the user. In practice, any attacker who is able to steal an access token can use it to log into a user's connected services. As explained by Guy Rosen, Facebook vice-president of product management, "[a]ccess tokens ***are the equivalent of digital keys*** that keep people logged in to Facebook so they don't need to re-enter their password every time they use the app."[12]

24.     For those Users' with other social media accounts linked to Quora, the Quora Data Breach could result in an additional breach of any of those linked accounts, including popular social media platforms and accounts such as Google, Facebook, Twitter, and Linkedin.

---

[10] *Id. See also* The New York Times, *Quora, the Q. and A. Site, Says Data Breach Affected 100 Million Users* (December 4, 2018), *available at* https://www.nytimes.com/2018/12/04/technology/quora-hack-data-breach.html (last visited December 18, 2018).

[11] *Id. See also* Forbes, *Quora Hacked: What Happened, What Data Was Stolen And What Do 100 Million Users Need To Do Next?* (December 4, 2018), *available at* https://www.forbes.com/sites/daveywinder/2018/12/04/quora-hacked-what-happened-what-data-was-stolen-and-what-do-100-million-users-need-to-do-next/#5bfa72404f44 (last visited December 18, 2018).

[12] Facebook, *Security Update*, (September 28, 2018), *available at* https://newsroom.fb.com/news/2018/09/security-update/ (last visited December 18, 2018) (emphasis added).

In its Privacy Policy, Defendant discloses to its Users that "[y]ou can elect to sign in or sign up to the Quora Platform through a linked network (i.e., Facebook or Google), and you can connect your existing Quora account with certain third party networks like Facebook, Twitter and LinkedIn (each a "Linked Network") . . . . we receive certain profile and account information about you from the Linked Network."[13]

25.    Addressing the Quora Data Breach, Leigh-Anne Galloway, the cybersecurity resilience lead at Positive Technologies, stated that "*the data sets that have been exposed here are huge*" and are not just the usual user credential leakage, but "also *their social network accounts* and potentially their private personal information that was posted on Quora."[14] In response to the Quora Data Breach, Galloway recommended that all organizations should prepare for the worst and get ready to deal with an almost inevitable breach.[15]

26.    This case involves the absolute and intentional disregard with which Defendant has chosen to treat the Personal Information of users who have utilized their Quora social media platform. While this Personal Information was supposed to be protected and shared only with expressed permissions, Defendant – without authorization – exposed that information to malicious third parties through lax and non-existent data safety and security policies and protocols.

**C.  Users' Personal Information is an Increasingly Valuable Commodity**

27.    Personal information from social media, like the Personal Information encompassed in the Quora Data Breach, is incredibly valuable to companies like Quora.

28.    In 2017, Quora, Inc. was valued at approximately $1.8 billion.[16] Although Quora, Inc. started out with no revenue source and relied entirely on venture capital, in 2016, it

---

[13] *Quora Privacy Policy*, *supra* fn. 4.

[14] Forbes, *supra* fn. 11 (emphasis added).

[15] *Id.*

[16] *Forbes*, With A Strong Monetization Platform, How Much Can Quora Be Worth? (June 25, 2018), *available at https://www.forbes.com/sites/greatspeculations/2018/06/25/with-a-strong-monetization-platform-how-much-can-quora-be-worth/#5bb9e18f3180* (last visited December 18, 2018).

introduced advertisements to its platform in order to begin generating revenue.[17] In 2017, Quora, Inc. doubled its advertisement sales team, with Puja Ramani, head of business marketing at Quora, Inc. explaining that "[t]his is how we're going to monetize. We've been really happy with the results so far and have doubled the ads team. We're going to be investing a lot in this area of the business."[18] A study earlier this year found that Quora, Inc. may generate as much as $112 million in revenue through advertisements in 2018 alone.[19]

29.    Quora's advertisement revenue is dependent on the engagement of Users, including Defendant's ability to collect personal information about its Users. Thus, when Users signed up to join Quora, they were entering into a transaction – a value-for-value exchange – in which they agreed to provide content and Personal Information that Defendant could use, subject to the Users' privacy restrictions. Because exclusive access to such content and information confers a competitive advantage, there is a "first user" value to the content and information. That value has now been lost due to the Quora Data Breach.

30.    One study found that the average consumer in the U.S. can make $240 per year monetizing his or her personal data for digital advertising.[20] Another study in 2018 found that social media advertising revenue currently amounts to $67.97 billion and that the average revenue per internet user currently amounts to approximately $22.84.[21]

31.    Additionally, the Personal Information compromised in the Quora Data Breach is highly valuable to identity thieves. The names, birthdates, hometowns, addresses, locations, interests, relationships, email addresses, photos, and videos, and other valuable personal information can all be used to gain access to a variety of existing accounts and websites.

---

[17] *See* Marketing Land, *With new funding & a growing userbase, Quora makes its pitch to advertisers* (April 27, 2017) *available at* https://marketingland.com/quora-makes-pitch-to-advertisers-213185 (last visited December 18, 2018).

[18] *Id.*

[19] Forbes, *supra* fn. 16.

[20] Medium, *How Much is Your Data Worth? At Least $240 per Year. Likely Much More*, *available at* https://medium.com/wibson/how-much-is-your-data-worth-at-least-240-per-year-likely-much-more-984e250c2ffa (last visited December 11, 2018).

[21] Statista, *Social Media Advertising*, *available at* https://www.statista.com/outlook/220/100/social-media-advertising/worldwide#market-revenuePerInternetUser (last visited December 11, 2018).

32.     Identity thieves can also use the Personal Information to harm Plaintiffs and the other Class members through embarrassment, blackmail, or harassment in person or online or to commit other types of fraud including obtaining ID cards or driver's licenses, fraudulently obtaining tax returns and refunds, and obtaining government benefits. A Presidential identity theft report from 2008 states that:

33.     In addition to the losses that result when identity thieves fraudulently open accounts or misuse existing accounts, . . . individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of non-financial identity theft, for example, health-related or criminal record fraud, face other types of harm and frustration.

34.     In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts, open new ones, and dispute charges with individual creditors.[22]

35.     To put it into context, the 2013 Norton Report[23] – based on one of the largest consumer cybercrime studies ever conducted – estimated that at that time, the global price tag of cybercrime was around *$113 billion* with the average cost per victim being $298 dollars, as demonstrated in the chart below:

---

[22] U.S. FTC, *The President's Identity Theft Task Force, Combating Identity Theft: A Strategic Plan*, (April 2007), https://www.ftc.gov/sites/default/files/documents/reports/combating-identity-theft-strategic-plan/strategicplan.pdf (last visited December 11, 2018).
[23] Norton by Symantec, *2013 Norton Report*, *available at* https://yle.fi/tvuutiset/uutiset/upics/liitetiedostot/norton_raportti.pdf (last visited December 10, 2018).

1
2
3
4
5
6
7
8
9
10
11
12
13



14    36.    The problems associated with identity theft are exacerbated by the fact that many
15  identity thieves will wait years before attempting to use the Personal Information they obtain.
16  Indeed, in order to protect themselves, Plaintiffs and the other Class members will need to
17  remain vigilant against unauthorized data use for years and decades to come.

18    37.    Once stolen, personal information can be used in a number of different ways.
19  One of the most common ways is that it is offered for sale on the dark web, a heavily encrypted
20  part of the internet that makes it difficult for authorities to detect the location or owners of a
21  website. Due to its hidden nature and the use of special applications to maintain anonymity, the
22  dark web is a haven for all kinds of illicit activity, including the trafficking of stolen personal
23  information captured via data breaches or hacks.[24] One 2018 study found that an individual's

24
25
26

27  [24] Experian, *What is the Dark Web?* (April 8, 2018), *available at*
   https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/ (last visited December 10,
28  2018). *See also* Brian Hamrick, *The dark web: A trip into the underbelly of the internet*, WLWT
   News (Feb. 9, 2017), http://www.wlwt.com/article/the-dark-web-a-trip-into-the-underbelly-of-
   the-internet/8698419 (last visited December 10, 2018).

1   online identity is worth approximately $1,170 on the dark web.[25]

2       38.    Once someone buys personal information, it is then used to gain access to

3   different areas of the victim's digital life, including bank accounts, social media, and credit card

4   details. During that process, other sensitive data may be harvested from the victim's accounts,

5   as well as from those belonging to family, friends, and colleagues.

6       39.    Personal information can also be used by scammers to target victims using

7   phishing scams.[26] Phishing is when scammers use personal information they have obtained

8   about victims to send fraudulent emails or texts, or copycat websites to get victims to share

9   additional valuable personal information – such as account numbers, Social Security numbers,

10  or login IDs and passwords.[27] Scammers use victims' information, including Personal

11  Information, to steal the victims' money, identity, or both.[28] Scammers also use phishing emails

12  to get access to a victim's computer or network, then install programs like ransomware that can

13  lock a victim out of important files on their computer.[29] According to one Federal Bureau of

14  Investigation study, scammers collected more than $676 million in 2017 alone through two

15  types of phishing scams: "Business Email Compromise" and "Email Account Compromise."[30]

16      40.    Matt Aldridge, senior solutions architect at the cybersecurity firm Webroot, in

17  response to the Quora Data Breach, provided that *"[c]yber attackers will use information*

18  *gained from social media sites to target employees through highly personalized attacks such*

19  *as spear phishing*. . . . through these types of attacks, malicious actors will trick employees into

---

[25] TOP10VPN, Dark Web Market Price Index (US Edition) (February 27, 2018), *available at* https://www.top10vpn.com/privacy-central/privacy/dark-web-market-price-index-feb-2018-us/ (last visited December 10, 2018).

[26] U.S. FTC, *Phishing* (July 2017), *available at* https://www.consumer.ftc.gov/articles/0003-phishing (last visited December 12, 2018).

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] U.S. Federal Bureau of Investigation, *2017 Internet Crime Report*, *available at* https://pdf.ic3.gov/2017_IC3Report.pdf (last visited December 12, 2018).

1   handing over their usernames and passwords, allowing them access to the company's

2   network."[31]

3        41.    Due to Defendant's conduct described herein, Plaintiffs and the other Class

4   members have a greater risk of identity theft, manipulation, fraud, scams, and/or targeted

5   unwanted and unnecessary advertising, including inappropriate communications. Additionally,

6   Plaintiffs and the other Class members now face additional security risks such as phishing

7   attempts, efforts by hackers trying to access or log in to their online accounts, friend requests

8   from trolls or cloned or imposter accounts, and/or other interference with their online accounts.

9   Plaintiffs and the other Class members are subjected to a heightened risk of such predatory

10  conduct due to Defendant's failure to secure their Personal Information, including the sale of

11  their content and Personal Information on the dark web and other illicit databases.

12  **CLASS ACTION ALLEGATIONS**

13       42.    Pursuant to Federal Rules of Civil Procedure ("Rules" or "Rule") 23(b)(2),

14  (b)(3), and (c)(4), Plaintiffs, individually and on behalf of all others similarly situated, brings

15  this lawsuit on behalf of themselves and as a class action on behalf of the following Class and

16  Subclass:

17      **Nationwide Class**: All persons in the United States who registered for Quora accounts
18      and whose Personal Information was accessed, compromised, or improperly obtained as
        a result of the Quora Data Breach.

19      **New Jersey Subclass:** All persons in New Jersey who registered for Quora accounts and
20      whose Personal Information was accessed, compromised, or improperly obtained as a
        result of the Quora Data Breach

21      **Colorado Subclass**: All persons in Colorado who registered for Quora accounts and
22      whose Personal Information was accessed, compromised, or improperly obtained as a
23      result of the Quora Data Breach

24       43.    Excluded from the Class and Subclass are Defendant and any entities in which

25  Defendant or its subsidiaries or affiliates have a controlling interest, as well as Defendant's

26  officers, agents, and employees. Also excluded from the Class and Subclass are the judge

27

28

---

[31] Forbes, *supra* fn. 11 (emphasis added).

assigned to this action, members of the judge's staff, and any member of the judge's immediate family. Plaintiffs reserve the right to amend the Class and Subclass definitions if discovery and further investigation reveal that any definitions should be expanded or otherwise modified.

44.     **Numerosity**: The members of each Class and Subclass are so numerous that joinder of all members of any Class would be impracticable. Defendant has indicated that up to 100 million people had their Quora accounts compromised as a result of the Quora Data Breach. The identity of these Quora Users can be determined through records and documents maintained by Defendant.

45.     **Commonality and Predominance**: This action involves common questions of law or fact, which predominate over any questions affecting individual Class and Subclass members, including:

a. Whether Defendant represented to Plaintiffs and the Class that it would safeguard Class members' Personal Information;

b. Whether Defendant owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their Personal Information;

c. Whether Defendant breached a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their Personal Information;

d. Whether third parties improperly obtained Plaintiffs' and Class members' Personal Information without authorization or in excess of any authorization;

e. Whether Defendant was aware of other third parties' collection of Plaintiffs' and Class members' Personal Information without authorization or in excess of any authorization;

f. Whether Defendant's conduct violated Cal. Civ. Code § 1750, *et seq.*;

g. Whether Defendant's conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq.*;

h. Whether Defendant's conducted violated the New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, *et seq.*;

i. Whether Defendant's conduct violated the Colorado Consumer Protection Act, Colo Rev. Stat. 6-1-101, *et seq.*;

j. Whether Defendant's conduct violated the Colorado Security Breach Notification Act, Colo Rev. Stat. 6-1-716, *et seq.*;

    k.  Whether Defendant's conduct violated § 5 of the FTC Act, 15 U.S.C. § 45, *et seq.*,

    l.  Whether Plaintiffs and the Class are entitled to equitable relief, including, but not limited to, injunctive relief and restitution; and

    m.  Whether Plaintiffs and the Class are entitled to actual, statutory, or other forms of damages, and other monetary relief.

46.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the Class and Subclass members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous common questions that dominate this action.

47.    Defendant's choice-of-law provision is further indication of the common questions of law. Defendant's Terms of Service provide, in relevant part, that "[t]his Agreement and any action arising out of your use of the Quora Platform will be governed by the laws of the State of California without regard to or application of its conflict of law provisions or your state or country of residence."

48.    **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the class and subclasses because, among other things, Plaintiffs and the other Class and Subclass members were injured through the substantially uniform misconduct by Defendant. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class and Subclass members, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and those of other Class and Subclass members arise from the same operative facts and are based on the same legal theories.

49.    **Adequacy of Representation**: Plaintiffs are adequate representatives of the class and subclasses because their interests do not conflict with the interests of the other Class and Subclass members they seek to represent, they have retained counsel competent and experienced in complex class action litigation, and they will prosecute this action vigorously. The Class and Subclass members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

50. **Superiority**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiffs and the other members of the classes are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impracticable for Class and Subclass members to individually seek redress for Defendant's wrongful conduct. Even if Class and Subclass members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

51. Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate under Rule 23(b)(2).

52. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

   a. Whether Class members' Personal Information was improperly obtained by third parties;

   b. Whether Defendant's conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq*.;

   c. Whether Defendant's representations that it would secure and protect the Personal Information of Plaintiffs and the other members of the Class were facts that reasonable persons could be expected to rely upon when deciding whether to use Defendant's services;

   d. Whether Defendant misrepresented the safety of its many systems and services, specifically the security thereof, and its ability to safely store Plaintiffs' and the other Class members' Personal Information;

e.  Whether Defendant concealed crucial information about its inadequate data security measures from Plaintiffs and the Class;

f.  Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

g.  Whether Defendant knew or should have known that it did not employ reasonable measures to keep Plaintiffs' and the other Class members' Personal Information secure and prevent the unauthorized disclosure of that information;

h.  Whether Defendant's conduct violated Cal. Bus. & Prof. Code § 22575, *et seq.*;

i.  Whether Defendant's conducted violated the New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, *et seq.*;

j.  Whether Defendant's conduct violated the Colorado Consumer Protection Act, Colo Rev. Stat. 6-1-101, *et seq.*;

k.  Whether Defendant owed a duty to Plaintiffs and the Class to safeguard their Personal Information and to implement adequate data security measures;

l.  Whether Defendant breached that duty;

m.  Whether Defendant failed to adhere to its posted privacy policy concerning the care it would take to safeguard Plaintiffs' and the other Class members' Personal Information in violation of California Business and Professions Code § 22576;

n.  Whether Defendant negligently and materially failed to adhere to its posted privacy policy with respect to the extent of its disclosure of users' data, in violation of California Business and Professions Code § 22576;

o.  Whether such representations were false with regard to storing and safeguarding Class and Class members' Personal Information; and

p.  Whether such representations were material with regard to storing and safeguarding Class members' Personal Information.

## CLAIMS ALLEGED ON BEHALF OF ALL CLASSES
### First Claim for Relief
### Violation of California's Unfair Competition Law ("UCL") – Unlawful Business Practice (Cal. Bus. & Prof. Code § 17200, *et seq.*)

53.  Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

54.  Defendant's choice-of-law provision establishes that California law applies to Plaintiffs' and the other Class members' claims.

55.     By reason of the conduct alleged herein, Defendant engaged in unlawful practices within the meaning of the UCL. The conduct alleged herein is a "business practice" within the meaning of the UCL.

56.     Quora represented that it would utilize sufficient data security protocols and mechanisms to protect Quora Users' Personal Information. Quora further represented that it would not disclose Quora Users' Personal Information without consent.

57.     Defendant failed to abide by these representations. Defendant did not prevent the improper disclosure of Plaintiffs' and the Class's Personal Information.

58.     Defendant stored the Personal Information of Plaintiffs and the Class members in Defendant's electronic and consumer information databases. Defendant falsely represented to Plaintiffs and the other members of the Class that the Personal Information databases were secure and that their Personal Information would remain private. Defendant knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied "with federal regulations" and that would have kept Plaintiffs' and the other Class members' Personal Information secure and prevented the loss or misuse of such Personal Information.

59.     Even without these misrepresentations, Plaintiffs and the other Class members were entitled to assume and did assume, that Defendant would take appropriate measures to keep their Personal Information safe. Defendant did not disclose at any time that Plaintiffs' Personal Information may be exposed to malicious third parties because Defendant's data security measures were inadequate, even though Defendant was the only ones in possession of that material information, which it had a duty to disclose. Defendant violated the UCL by misrepresenting, both by affirmative conduct and by omission, the strength of the security of its systems and services, and its ability to honor the disclosure authorizations established by Plaintiffs and the other Class members for their Personal Information.

60.     Defendant also violated the UCL by failing to implement reasonable and appropriate security measures or follow industry standards for data security and failing to comply with its own posted privacy policies. If Defendant had complied with these legal

1   requirements, Plaintiffs and the other Class members would not have suffered the damages

2   described herein.

3       61.     Defendant's acts, omissions, and misrepresentations as alleged herein were

4   unlawful and in violation of, *inter alia*, Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Cal.

5   Bus. & Prof. Code § 22576 (as a result of Quora failing to comply with its own posted privacy

6   policy).

7       62.     Plaintiffs and the other Class members suffered injury in fact and lost money or

8   property as the result of Defendant's unlawful business practices. In particular, Plaintiffs' and

9   the other Class members' Personal Information was taken and is in the hands of those who will

10  use it for their own malicious and nefarious advantage, or is being sold for value, making it

11  clear that such information is of tangible value.

12      63.     As a result of Defendant's unlawful business practices, which are violations of

13  the UCL, Plaintiffs and the other Class members are entitled to restitution, disgorgement of

14  wrongfully obtained profits, and injunctive relief.

15  **Second Claim for Relief**
**Violation of California's UCL – Unfair Business Practice**
16  **(Cal. Bus. & Prof. Code § 17200, *et seq*.)**

17      64.     Plaintiffs hereby repeat, reallege, and incorporate by reference each and every

18  allegation contained above as though the same were fully set forth herein.

19      65.     Defendant's choice-of-law provision establishes that California law applies to

20  Plaintiffs' and the other Class members' claims.

21      66.     By reason of the conduct alleged herein, Defendant engaged in unfair "business

22   practices" within the meaning of the UCL.

23      67.     Defendant stored the Personal Information of Plaintiffs and Class members in its

24  electronic and consumer information databases. Defendant represented to Plaintiffs and the

25  other members of the Class that their Personal Information databases were secure and that such

26  Personal Information would remain private and be disclosed only with expressed authorization.

27  Defendant engaged in unfair acts and business practices by representing that it would require

28

---

1  expressed consent and authorization from Plaintiffs and the other Class members prior to the

2  disclosure of Personal Information to third parties.

3       68.    Even without these misrepresentations, Plaintiffs and the other Class members

4  were entitled to, and did, assume Defendant would take appropriate measures to keep their

5  Personal Information safe. Defendant did not disclose at any time that Plaintiffs' Personal

6  Information was vulnerable to unauthorized disclosure because Defendant's data security

7  measures were inadequate, even though Defendant was in sole possession of that material

8  information, which it had a duty to disclose.

9       69.    Defendant knew or should have known it did not employ reasonable measures

10  that would have kept Plaintiffs' and the other Class members' Personal Information secure from

11  unauthorized disclosure.

12       70.    Defendant engaged in unfair acts and business practices by representing that it

13  would not disclose this Personal Information without authorization and/or by obtaining that

14  Personal Information without authorization. Not only did Defendant also violate its commitment

15  to maintain the confidentiality and security of the Personal Information of Plaintiffs and the

16  Class, but it failed to comply with its own stated policies and applicable laws, regulations, and

17  industry standards relating to data security.

18       71.    **Defendant engaged in unfair business practices under the "balancing test**."

19  The harm caused by Defendant's actions and omissions, as described in detail *supra*, greatly

20  outweigh any perceived utility. Indeed, Defendant's failure to follow basic data security

21  protocols and misrepresentations to consumers about Defendant's data security cannot be said

22  to have had any utility at all.

23       72.    **Defendant engaged in unfair business practices under the "tethering test."**

24  Defendant's actions and omissions, as described in detail *supra*, violated fundamental public

25  policies expressed by the California Legislature. *See*, *e.g.*, Cal. Civ. Code § 1798.1 ("The

26  Legislature declares that ... all individuals have a right of privacy in information pertaining to

27  them.... The increasing use of computers ... has greatly magnified the potential risk to individual

28  privacy that can occur from the maintenance of Personal Information."); Cal. Bus. & Prof. Code

1   § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy

2   Protection Act] is a matter of statewide concern."). Defendant's acts and omissions, and the

3   injuries caused by them are thus "comparable to or the same as a violation of the law …" *Cel-*

4   *Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 187.

5   　　　　73.   **Defendant engaged in unfair business practices under the "FTC test."** The

6   harm caused by Defendant's actions and omissions, as described in detail *supra*, is substantial in

7   that it affects up to 100 million Class members and has caused those persons to suffer actual

8   harms. Such harms include a substantial risk of identity theft, disclosure of Class members'

9   Personal Information to malicious third parties without their consent, diminution in value of

10  their Personal Information, and consequential out-of-pocket losses for procuring credit freeze or

11  protection services, identity theft monitoring, and other expenses relating to identity theft losses

12  or protective measures. This harm continues given the fact that Class members' Personal

13  Information remains in Defendant's possession, without adequate protection, and is also in the

14  hands of those who obtained it without their consent. Defendant's actions and omissions

15  violated, *inter alia*, Section 5(a) of the FTC Act, 15 U.S.C. § 45. *See, e.g.*, *F.T.C. v. Wyndham*

16  *Worldwide Corp.*, 10 F. Supp. 3d 602, 613 (D.N.J. 2014), *aff'd*, 799 F.3d 236 (3d Cir. 2015); *In*

17  *re LabMD, Inc.*, FTC Docket No. 9357, FTC File No. 102-3099 (July 28, 2016) (failure to

18  employ reasonable and appropriate measures to secure Personal Information collected violated §

19  5(a) of FTC Act); *In re BJ's Wholesale Club, Inc.*, FTC Docket No. C-4148, FTC File No. 042-

20  3160 (Sept. 20, 2005) (same); *In re CardSystems Solutions, Inc.*, FTC Docket No. C-4168, FTC

21  File No. 052-3148 (Sept. 5, 2006) (same); *see also United States v. ChoicePoint, Inc.*, Civil

22  Action No. 1:06-cv-0198-JTC (N.D. Ga. Oct. 14, 2009) ("failure to establish and implement,

23  and thereafter maintain, a comprehensive information security program that is reasonably

24  designed to protect the security, confidentiality, and integrity of Personal Information collected

25  from or about consumers" violates § 5(a) of FTC Act); 15 U.S.C. § 45(n) (defining "unfair acts

26  or practices" as those that "cause[] or [are] likely to cause substantial injury to consumers which

27  [are] not reasonably avoidable by consumers themselves and not outweighed by countervailing

28  benefits to consumers or to competition.").

74.     Plaintiffs and the other Class members suffered injury in fact and lost money or property as the result of Defendant's unfair business practices. In addition, their Personal Information was taken and is in the hands of those who will use it for their own malicious and nefarious advantage, or is being sold for value, making it clear that the hacked information is of tangible value.

75.     As a result of Defendant's unfair business practices, which are violations of the UCL, Plaintiffs and the other Class members are entitled to restitution, disgorgement of wrongfully obtained profits, and injunctive relief.

**Third Claim for Relief**

**Violation of California's UCL – Fraudulent/Deceptive Business Practice**
**(Cal. Bus. & Prof. Code § 17200, *et seq*.)**

76.     Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

77.     Defendant's choice-of-law provision establishes that California law applies to Plaintiffs' and the other Class members' claims.

78.     Defendant engaged in fraudulent and deceptive acts and practices with regard to the services it provided to the Class by representing and advertising that (1) it would maintain adequate data privacy and security practices and procedures to safeguard Class members' Personal Information from unauthorized disclosure, release, data breaches, and theft; and (2) it did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Class members' Personal Information. These representations were likely to deceive members of the public, including Plaintiffs and the other Class members, into believing their Personal Information was securely stored – when it was not – and that Defendant was complying with relevant law – when it was not.

79.     Defendant engaged in fraudulent and deceptive acts and practices with regard to the services provided to the Class by omitting, suppressing, and concealing the material fact that the privacy and security protections for Class members' Personal Information was woefully inadequate. At the time that Class members were using Defendant's services, Defendant failed to disclose to Class members that its data security systems failed to meet legal and industry

standards for the protection of Class members' Personal Information. These representations likely deceived members of the public, including Plaintiffs and the Class, into believing that their Personal Information was securely stored – when it was not – and that Defendant was complying with relevant law and industry standards – when it was not.

80.     As a direct and proximate result of Defendant's deceptive practices and acts, Plaintiffs and the Class were injured and lost money or property, including, but not limited to, the loss of their legally protected interest in the confidentiality and privacy of their Personal Information, as well as the additional losses, described *supra*.

81.     Defendant knew or should have known that its computer systems and data security practices were inadequately safeguarding Class members' Personal Information and that the risk of a data breach or theft was very high.

82.     Defendant's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Class.

83.     Class members seek relief under Cal. Bus. & Prof. Code § 17200, *et. seq.*, including, but not limited to, restitution to Plaintiffs and the Class of money or property that Defendant may have acquired by means of its fraudulent and deceptive business practices, restitutionary disgorgement of all profits accruing to Defendant because of its fraudulent and deceptive business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

### Fourth Claim for Relief
### Negligence

84.     Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

85.     Defendant owed a duty to Plaintiffs and the Class to exercise reasonable care in safeguarding and protecting their Personal Information and keeping it from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties.

86.     Defendant knew that the Personal Information of Plaintiffs and the Class was personal and sensitive information that is valuable to identity thieves and other criminals. Defendant also knew of the serious harms that could happen if the Personal Information of Plaintiffs and the Class was wrongfully disclosed and/or that disclosure was not fixed.

87.     By being entrusted by Plaintiffs and the Class to safeguard their Personal Information, Defendant had a special relationship with Plaintiffs and the Class. Plaintiffs and the Class signed up for Defendant's services and agreed to provide their Personal Information with the understanding that Defendant would take appropriate measures to protect it and would inform Plaintiffs and the Class of any breaches or other security concerns that might call for action by Plaintiffs and the Class. But, Defendant did not. Defendant not only knew that its data security was inadequate, it also knew that it did not have the tools to detect and document intrusions or exfiltration of Plaintiffs' and the Class' Personal Information.

88.     Defendant breached its duty to exercise reasonable care in safeguarding and protecting Plaintiffs' and the Class members' Personal Information by failing to adopt, implement, and maintain adequate security measures to safeguard that information and prevent unauthorized disclosure of Plaintiffs' and the other Class members' Personal Information.

89.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and the Class, their Personal Information would not have been compromised, stolen, and viewed by unauthorized persons.

90.     Defendant's negligence was a direct and legal cause of the theft of the Personal Information of Plaintiffs and the Class and all their resulting damages.

91.     The injury and harm suffered by Plaintiffs and the other Class members was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other class members' Personal Information. Defendant knew its systems and technologies for processing and securing the Personal Information of Plaintiffs, and the Class had numerous security vulnerabilities.

92.     As a result of this misconduct by Defendant, the Personal Information of Plaintiffs and the Class was compromised – placing them at a greater risk of identity theft and subjecting them to identity theft – and was disclosed to third parties without their consent.

**Fifth Claim for Relief**
**Invasion of Privacy**

93.     Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

94.     Defendant's choice-of-law provision establishes that California law applies to Plaintiffs' and all Class members' claims.

95.     The California Constitution expressly provides for a right to privacy. Cal. Const. Art. I, Sec. 1.

96.     Defendant's Privacy Policy for all times relevant to this matter provided that Users' Personal Information would not be released to third parties without express consent.

97.     Absent their express consent, Plaintiffs' and the other Class members used Quora under the impression that Personal Information was safeguarded and would not be provided to or stolen by, third parties.

98.     Plaintiffs and the other Class members had an interest in the protection and non-dissemination of their Personal Information that Defendant electronically stored, including the right not to have that Personal Information stolen and used for profit and/or malicious purposes.

99.     Absent the express consent of Quora Users, Defendant intentionally intruded on Plaintiffs' and the other Class members' private life, seclusion, and solitude, which is protected under the California constitution as well as common law.

100.     Defendant's wrongful conduct constitutes breach of the social norms underpinning the constitutionally-protected right to privacy.

101.     Defendant's wrongful conduct harmed Plaintiffs and the other Class members.

102.     As a direct and proximate result of Defendant wrongful conduct, Plaintiffs and the other Class members have suffered injury and are entitled to appropriate relief, including injunctive relief and damages.

**Sixth Claim for Relief**

**Breach of Confidence**

103.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

104.    This claim is asserted against Defendant for breach of confidence concerning the Personal Information that Plaintiffs and the other Class members provided to Defendant in confidence.

105.    At all times during Plaintiffs' and the other Class members' interactions with Defendant, Defendant was fully aware of the confidential nature of the Personal Information that Plaintiffs and Class members shared with Defendant.

106.    As alleged herein and above, Defendant's relationship with Plaintiffs and Class members was governed by Defendant's Privacy Policy and the expectation that Plaintiffs' and Class members' Personal Information would be collected, stored, and protected in confidence by Defendant, and not disclosed to unauthorized third parties.

107.    Plaintiffs and the other Class members provided their respective Personal Information to Defendant with the explicit and implicit understanding that Defendant would protect and not permit that Personal Information to be disseminated to any unauthorized third parties.

108.    Defendant voluntarily received in confidence Plaintiffs' and the other Class members' Personal Information with the understanding that that Personal Information would not be disclosed or disseminated to the public or any unauthorized third parties.

109.    Due to Defendant's failure to prevent, detect, and stop the Quora Data Breach from occurring, Plaintiffs' and the other Class members' Personal Information was disclosed and misappropriated to unauthorized malicious third parties beyond their confidence and without their express permission.

110.    As a direct and proximate cause of Defendant's actions and inactions, Plaintiffs and the other Class members have suffered damages.

111.   But for Defendant's disclosure of Personal Information in violation of the parties' understanding that it would be held in confidence, Plaintiffs' and the other Class members' Personal Information would not have been compromised, stolen, and viewed by unauthorized persons. Defendant's disclosure was a direct and legal cause of the theft of Plaintiffs' and the other Class members' Personal Information, as well as their resulting damages.

112.   The injury and harm Plaintiffs and the other Class members suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiffs' and Class members' Personal Information. Defendant knew its computer systems and technologies for accepting and securing Plaintiffs' and Class members' Personal Information had numerous security vulnerabilities, but Defendant continued to collect, store, and maintain Plaintiffs' and Class members' Personal Information without fixing the vulnerabilities.

113.   As a result of Defendant's misconduct, Plaintiffs' and the other Class members' Personal Information was compromised – placing them at a greater risk of identity theft and subjecting them to identity theft and fraud – and disclosed to unauthorized, malicious, third parties without their consent. Plaintiffs and the other Class members also suffered diminution in value of their Personal Information in that it became easily available to hackers on the dark web. Plaintiffs and the other Class members have also suffered consequential out-of-pocket losses for procuring credit freezes or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

**Seventh Claim for Relief**
**Deceit by Concealment or Omission**
**(Cal. Civil Code §§ 1709, 1710)**

114.   Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

115.   Defendant's choice-of-law provision establishes that California law applies to Plaintiffs' and the other Class members' claims.

116.   As alleged above, Defendant knew that its data security measures were grossly inadequate.

117.    Had Defendant disclosed the true facts about its poor data security, Plaintiffs and the Class would have taken measures to protect themselves. Plaintiffs and the Class justifiably relied on Defendant to provide accurate and complete information about Defendant's data security, which Defendant failed to do.

118.    Independent of any representations made by Defendant, Plaintiffs and the Class justifiably relied on Defendant to provide a service with at least minimally adequate security measures and to disclose facts undermining that reliance.

119.    Defendant failed to provide a service with at least minimally adequate security measures, causing the Quora Data Breach.

120.    These actions are "deceit" under Cal. Civil Code § 1710 in that they are the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact.

121.    As a result of this deceit by Defendant, it is liable under Cal. Civil Code § 1709 for "any damage which [Plaintiffs and the Class] thereby suffer[]."

122.    As a result of this deceit by Defendant, the Personal Information of Plaintiffs and the Class were compromised, and their Personal Information was disclosed to third parties without their consent. Plaintiffs and the other Class members also suffered diminution in value of their Personal Information and consequential out-of-pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

123.    Defendant's deceit as alleged herein is fraud under Civil Code § 3294(c)(3) in that it was a deceit or concealment of a material fact known to the Defendant conducted with the intent on the part of Defendant of depriving Plaintiffs and the Class of "legal rights or otherwise causing injury." As a result, Plaintiffs and the Class are entitled to punitive damages against Defendant under Civil Code § 3294(a).

**Eighth Claim for Relief**
**Breach of Contract**

124.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

125.    At all relevant times, Defendant and Plaintiffs mutually assented to and therefore were bound by the version of Quora's Privacy Policy (the "Contract") that was operative at the time each of the Plaintiffs and the other Class members joined Quora.

126.    Throughout the Class Period, Defendant affirmatively stated in the Contract that it would not disclose Quora Users' Personal Information without consent and/or notice. Defendant further represented in the Contract that it would utilize sufficient data security protocols and mechanisms to protect Quora Users' Personal Information.

127.    Nothing in the Contract informed and obtained Users' meaningful and lawfully-obtained consent to share their content and information with malicious third parties without their consent.

128.    Thus, per the provision above, the Contract did not authorize Defendant to share Plaintiffs' and the other Class members' Personal Information with malicious third-parties without their consent by failing to provide a service with at least minimally adequate security measures.

129.    Plaintiffs and the other Class members fully performed their obligations under the Contract.

130.    Defendant breached the Contract it entered into with Plaintiffs and the other Class members by failing to safeguard and protect their Personal Information and improperly allowing malicious third-parties to access their Personal Information without their consent.

131.    As a direct and proximate result of Defendant's breaches of the Contracts between Defendant and Plaintiffs and the other Class members, Plaintiffs and the other Class members sustained actual losses and damages as described in detail *supra*. Plaintiffs and the other Class members suffered injury in fact and lost money or property. In addition, Plaintiffs and the other Class members' Personal Information was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the hacked information is of tangible value.

**<u>Ninth Claim for Relief</u>**

**Breach of Implied Covenant of Good Faith and Fair Dealing**
**(In the Alternative)**

132.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein. This claim is pleaded in the alternative to the claim for breach of contract.

133.    Defendant's choice-of-law provision establishes that California law applies to Plaintiffs' and the other Class members' claims.

134.    Under California law, there is in every contract or agreement an implied promise of good faith and fair dealing. Such a duty is read into contracts and functions as a supplement to the express contractual covenants, in order to prevent a transgressing party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefit of the contract. Thus, all claims must be read in the context of, and give way to, Plaintiffs' and Class members' rights to the benefit of the contract.

135.    Defendant made specific representations to Plaintiffs and the other Class members mutually regarding Defendant's protection of Users' Personal Information in its Privacy Policy that was operative at the time each of the Plaintiffs and the other Class members joined Quora.

136.    A covenant of good faith and fair dealing attaches to Defendant's Privacy Policy.

137.    Throughout the Class Period, Defendant affirmatively stated in its Privacy Policy that it would not disclose Quora Users' Personal Information without their consent. Defendant further represented in its Privacy Policy that it would utilize sufficient data security protocols and mechanisms to protect Quora Users' Personal Information.

138.    Plaintiffs and the other Class members fully performed their obligations under the contractual provisions in the Privacy Policy.

139.    Under the terms of the Privacy Policy, Plaintiffs and the other Class members were entitled to receive the benefits promised to them by Defendant, including that Defendant would protect their Personal Information, not disclose their Personal Information to third parties without their consent, and keep their Personal Information secure.

1      140.    Defendant was uniquely able to control the rights of Users, including Plaintiffs and the other Class members, concerning their privacy, ownership, and control of their content and information, and whether that content and information would be accessible to third parties without their consent.

141.    Defendant surreptitiously took measures to frustrate and undercut Plaintiffs' and the other Class members' contractual rights concerning their privacy, ownership, and control over their Personal Information, and whether their content and information would be accessible to third-parties without their consent. By doing so, Defendant deprived Plaintiffs and the other Class members of the benefits under their contracts with Defendant, including the Privacy Policy.

142.    As a direct and proximate result of Defendant's breaches of its duty of good faith and fair dealing, Plaintiffs and the other Class members sustained actual losses and damages as described in detail *supra*. Plaintiffs and the other Class members suffered injury in fact and lost money or property. In addition, their Personal Information was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the hacked information is of tangible value.

## ADDITIONAL CLAIMS ALLEGED ON BEHALF OF THE NEW JERSEY SUBCLASS ONLY

### Tenth Claim for Relief
### Violation of New Jersey Consumer Fraud Act
### (N.J. Stat. Ann. §§ 56:8-1, *et seq*.)
### (In the Alternative)

143.    Plaintiff Cooper ("New Jersey Plaintiff") hereby repeats, realleges, and incorporates by reference each and every allegation contained above as though the same were fully set forth herein.

144.    New Jersey Plaintiff brings this cause of action on behalf of herself and on behalf of the New Jersey Subclass who are all New Jersey residents.

145.    Defendant is a "person," as defined by N.J. Stat. Ann. § 56:8-1(d).

146.    Defendant sells "merchandise" as defined by N.J. Stat. Ann. § 56:8-1(c) & (e).

147.   The New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, *et seq.*, prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on that concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

148.   Defendant's unconscionable and deceptive practices include:

    a.   Failing to implement and maintain reasonable security and privacy measures to protect New Jersey Plaintiff's and the other New Jersey Subclass members' Personal Information, which was a direct and proximate cause of the Quora Data Breach;

    b.   Failing to identify foreseeable security and privacy risks and remediate identified security and privacy risks, which was a direct and proximate cause of the Quora Data Breach;

    c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of New Jersey Plaintiff's and the other New Jersey Subclass members' Personal Information, which was a direct and proximate cause of the Quora Data Breach;

    d.   Misrepresenting that it would protect the privacy and confidentiality of New Jersey Plaintiff's and the other New Jersey Subclass members' Personal Information, including by implementing and maintaining reasonable security measures;

    e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of New Jersey Plaintiff's and the other New Jersey Subclass members' Personal Information;

    f.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of New Jersey Plaintiff's and the other New Jersey Subclass members' Personal Information.

148.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

149.   Defendant intended to mislead New Jersey Plaintiff and the other New Jersey Subclass members and induce them to rely on Defendant's misrepresentations and omissions.

150.    Defendant acted intentionally, knowingly, and maliciously to violate New Jersey's Consumer Fraud Act, and recklessly disregarded New Jersey Plaintiff's and the other New Jersey Subclass members' rights.

151.    As a direct and proximate result of Defendant's unconscionable and deceptive practices, New Jersey Plaintiff and the other New Jersey Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages – including from fraud and identity theft, time, and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and the loss of value of their Personal Information.

152.    New Jersey Plaintiff and the other New Jersey Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

### ADDITIONAL CLAIMS ALLEGED ON BEHALF OF THE COLORADO SUBCLASS ONLY

### Eleventh Claim for Relief
### Violation of Colorado Consumer Protection Act
### (Colo. Rev. Stat 6-1-101, *et seq.*)
### (In the Alternative)

153.    Plaintiff Connor hereby repeats, realleges, and incorporates by reference each and every allegation contained above as though the same were fully set forth herein.

154.    Plaintiff Connor ("Colorado Plaintiff") brings this cause of action on behalf of herself and the Colorado Subclass who are all Colorado residents.

155.    Defendant is a "person" as defined by Colo. Rev. Stat. § 6-1-102(6). Colorado Plaintiff and the other Colorado Subclass members are actual or potential consumers of the products and services offered by the Defendant.

156.    Defendant, operating in Colorado, engaged in deceptive, unfair, and unlawful trade acts or practices in the course of its business, vocation, or occupation, in violation of Colo. Rev. Stat. § 6-1-105, including, but not limited to, the following:

a. Knowingly misrepresenting and fraudulently advertising material facts pertaining to its products and services to the Colorado Subclass by representing and advertising that it would maintain adequate data privacy and security practices and procedures to safeguard Colorado Subclass members' Personal Information from unauthorized disclosure, release, data breaches, and theft, in violation of Colo. Rev. Stat. §§ 6-1-105(e), (g), (i), and (u);

b. Knowingly misrepresenting material facts pertaining to its products and services to the Colorado Subclass by representing and advertising that it did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Colorado Subclass members' Personal Information, in violation of Colo. Rev. Stat. §§ 6-1-105(e), (g), (i), and (u);

c. Knowingly omitting, suppressing, and concealing the material fact of the inadequacy of its privacy and security protections for Colorado Subclass members' Personal Information (intending to induce others to enter into a transaction), in violation of Colo. Rev. Stat. §§ 6-1-105(e), (g), (i), and (u);

d. Engaging in deceptive, unfair, and unlawful trade acts or practices, in violation of Colo. Rev. Stat. § 6-1-105(3), by failing to maintain the privacy and security of Colorado Subclass members' Personal Information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, including Colo. Rev. Stat. § 6-1-713.5, resulting in the Quora Data Breach;

157.    Under Colo. Rev. Stat. § 6-1-713.5, Defendant "maintains, owns, or licenses personal identifying information of an individual residing in [Colorado]," and thus is required to "implement and maintain reasonable security procedures and practices that are appropriate to the nature of the personal identifying information and the nature and size of the business and its operations." Defendant failed to maintain reasonable security procedures and practices appropriate for the nature and size of its business and operation.

158.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Personal Information.

159.    Defendant intended to mislead Colorado Plaintiff and the other Colorado Subclass members and induce them to rely on Defendant's misrepresentations and omissions.

160.    Had Colorado Plaintiff and the other Subclass members known that Defendant failed to employ necessary and adequate protection of Colorado Plaintiff's and the other

Colorado Subclass members' personal information, they would not have created a Quora account, or they would have limited the Personal Information they shared with Defendant.

161.    Defendant engaged in the above unfair and deceptive acts or practices in the course of its business.

162.    Defendant engaged in above unfair and deceptive acts or practices with malice and/or willfulness.

163.    As a direct and proximate result of Defendant's unfair and deceptive practices, Colorado Subclass members suffered injuries to legally protected interests, including their legally protected interest in the confidentiality and privacy of their Personal Information.

164.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Colorado Plaintiff and the other Colorado Subclass members that they could not reasonably avoid. This substantial injury outweighed any benefits to consumers or to competition.

165.    Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard Colorado Subclass members' Personal Information, and that risk of a data breach or theft was high. Defendant's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the Colorado Subclass members.

166.    Colorado Plaintiff and the other Colorado Subclass members seek relief under Colo. Rev. Stat. §§ 6-1-101, *et seq.*, including, but not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

**Twelfth Claim for Relief**
**Violation of Colorado Security Breach Notification Act**
**(Colo. Rev. Stat 6-1-716, *et seq.*)**

167.    Colorado Plaintiff hereby repeats, realleges, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

168.    Colorado Plaintiff brings this cause of action on behalf of herself and on behalf of the Colorado Subclass who are all Colorado residents.

169.     Defendant is a business that owns or licenses computerized data that includes Personal Information as defined by Colo. Rev. Stat. §§ 6-1-716(1) and 6 1-716(2). The Personal Information of Colorado Plaintiff and the Colorado Subclass at issue includes the kinds of Personal Information covered by Colo. Rev. Stat. §§ 6-1-716(1) and 6-1-716(2).

170.     Under Colo. Rev. Stat. § 6-1-713.5, Defendant "maintains, owns, or licenses personal identifying information of an individual residing in [Colorado]," and thus is required to "implement and maintain reasonable security procedures and practices that are appropriate to the nature of the personal identifying information and the nature and size of the business and its operations."

171.     As alleged in detail *supra*, Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of Personal Information, and protect that information from unauthorized access, destruction, use, modification, or disclosure, which resulted in the Quora Data Breach.

172.     As a direct and proximate result of Defendant's violations of Colo. Rev. Stat 6-1-716, *et seq*, Colorado Plaintiff and the other Colorado Subclass members suffered damages, as described herein.

173.     Colorado Plaintiff and the other Colorado Subclass members seek relief under Colo. Rev. Stat. § 6-1-716(4), including actual damages and equitable relief.

**PRAYER FOR RELIEF**

174.     WHEREFORE, Plaintiffs, individually and on behalf of the other Class and Subclasses members, respectfully request that this Court enter an Order:

    a.  Certifying the United States Class and New Jersey and Colorado Subclasses, and appointing Plaintiffs as Class Representatives;

    b.  Appointing Plaintiffs' attorney as Class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

    c.  Finding that Defendant's conduct was negligent, deceptive, unfair, and unlawful as alleged herein;

    d.  Enjoining Defendant from engaging in further negligent, deceptive, unfair, and unlawful business practices as alleged herein;

e.   Awarding Plaintiffs and the other Class members actual, compensatory, and consequential damages;

f.   Awarding Plaintiffs and the other Class members statutory damages and penalties, as allowed by law;

g.   Awarding Plaintiffs and the other Class members restitution and disgorgement;

h.   Requiring Defendant to provide appropriate credit monitoring services to Plaintiffs and the other class members;

i.   Awarding Plaintiffs and the other Class members punitive damages;

j.   Awarding Plaintiffs and the other Class members pre-judgment and post-judgment interest;

k.   Awarding Plaintiffs and the other Class members reasonable attorneys' fees costs and expenses, and;

l.   Granting such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

175.   Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 21, 2018.

*/s/ Ivy T. Ngo*

Ivy T. Ngo (249860)
**Franklin D. Azar & Associates, P.C.**
14426 E. Evans Avenue
Aurora, CO  80014
Telephone: 303-757-3300
Facsimile:  720-213-5131
Email:      ngoi@fdazar.com

*Counsel for Plaintiffs*